IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| CHERYL D. HAMILTON,              )<br>                                                 )<br>          Petitioner,              )<br>                                                 )<br>     v.                                      )<br>                                                 )<br>MICHAEL J. ASTRUE,[1]           )<br>Commissioner of Social Security  )<br>Administration,                        )<br>                                                 )<br>          Respondent.             )<br>_____) | Case No. CV 2:05-cv-00448-MHW<br><br>**MEMORANDUM DECISION<br>AND ORDER** |

## Introduction

Currently pending before the Court for its consideration is Petitioner CHERYL D. HAMILTON's ("Petitioner") Petition for Review (Docket No. 1) of the Respondent's denial of social security benefits, filed November 2, 2005. The Court has reviewed the Petition for Review and the Answer, the parties' memorandums, the administrative record (AR) and for the reasons that follow, will remand the decision of the Commissioner.

---

[1] Pursuant to Fed. R. App. P. 43(c)(2), upon his appointment as Acting Commissioner of Social Security on February 12, 2007, Michael J. Astrue is substituted for Jo Anne B. Barnhart.

**Memorandum Decision and Order - Page 1**

# I.
# Procedural and Factual History

Petitioner filed an application for Supplemental Security Income payments on October 20, 2000, and for Disability Insurance Benefits on November 29, 2000, alleging disability during a closed period between April 19, 1997 and December 31, 2001, caused by depression, chemical sensitivity, asthma, back pain and other psychological impairments. Petitioner's application was denied initially and again on reconsideration, and a request for a hearing was timely filed.

Administrative Law Judge (ALJ) Richard Hines held hearings on August 17 and November 13, 2002, taking testimony from Petitioner, Allan Bostwick, Ph.D., Dr. Arthur Craig, and vocational expert Tom Moreland. (AR 502–558). ALJ Hines issued a decision finding Petitioner not disabled on February 20, 2003. (AR 414–430).

Petitioner filed a timely appeal to the Appeals Council, which granted her request for review, and remanded the matter to the ALJ. (AR 443–445). The ALJ conducted an additional hearing on February 24, 2005, at which vocational expert Fred Cutler testified. (AR 559–577). ALJ Hines issued a supplemental decision on April 19, 2005, finding Petitioner not disabled. (AR 17–28). Petitioner filed a timely appeal to the Appeals Council, which denied her request for review, making the ALJ's decision the final decision of the Commissioner. (AR 8–11). Petitioner appealed the final decision to this Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the ALJ's supplemental decision, Petitioner was 49 years old. She has a high school equivalency education (GED), and her past relevant work includes work as a certified nurse's aide and cashier.

## II.
## Sequential Process

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantially gainful activity.  The ALJ found Petitioner had not engaged in substantial gainful activity since her alleged onset date.  At step two, it must be determined whether claimant suffers from a severe impairment.  The ALJ found Petitioner's musculoskeletal, pulmonary and mental impairments "severe" within the meaning of the Regulations.  Step three asks whether a claimant's impairments meet or equal a listed impairment.  The ALJ found that Petitioner's impairments, considered both separately and in combination, did not meet or equal the criteria for a listed impairment.  If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.  In both his initial decision and his decision on remand, the ALJ found Petitioner was able to perform her past relevant work as a cashier.  However, the ALJ in his decision on remand also considered step five, which is required if a claimant demonstrates an inability to perform past relevant work.  Then the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.  The ALJ found that, even if Petitioner was not disabled at step four, he would also have found Petitioner not disabled at step five.

## III.
## Standard of Review

The Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *See* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971).  An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work that exists in the national economy.  42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Social Security Commissioner if the decision is supported by substantial evidence and is not the product of legal error.  42 U.S.C. § 405(g); *Univ. Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel,* 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla but less than a preponderance, *Jamerson v Chater,* 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims.  42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir.

**Memorandum Decision and Order - Page 4**

1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel,* 188 F.3d 1087, 1089 (9th Cir. 1999).

In reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## IV.
## Discussion

Petitioner believes the ALJ erred at the fourth step of the sequential evaluation process in his decision upon remand. She specifically contends that the ALJ failed to obtain additional evidence from a vocational expert to clarify the effect of her assessed limitations on the Petitioner's occupational base. Petitioner also contends that the ALJ gave an improper hypothetical that failed to reflect her psychological limitations during the closed period. The Court will address each of these arguments in turn.

**A.    ALJ's Decision Regarding Step Four on Remand.**

Petitioner contends that the ALJ did not obtain sufficient evidence upon remand to assess

how the Petitioner's limitations erode her occupational base for light work or the extent to which her limitations erode this base as required by the remand order. The Court finds that the ALJ erred in his consideration of the evidence upon remand, for the reasons that follow.

### 1. Petitioner's Impairments.

In his first decision, the ALJ made specific findings concerning Petitioner's exertional and non-exertional limitations. (AR 419–425). He found that, since 1990, the medical record established that Petitioner suffered from low back pain precipitated by an injury while working as a nurse's assistant. Her pain was exacerbated by an automobile accident that occurred on August 27, 1997. The ALJ found that her musculoskeletal pain precluded her ability to lift more than ten pounds frequently or more than twenty pounds occasionally, and that she could not bend or stoop more than occasionally. (AR 428). Petitioner does not contest these factual findings relating to her low back pain.

As to her chemical sensitivity and asthma, the ALJ noted that these symptoms were largely self-reported. The medical records indicate that Petitioner presented to the emergency room on June 17, 1996, complaining of difficulty breathing, shortness of breath, and tightness in her chest after smelling a formaldehyde-like substance at the post office where she was working at the time. (AR 419). These symptoms were confirmed upon examination, she was given inhalants that resolved her symptoms, and she was diagnosed as having experienced inhalant reaction and irritation. (AR 419). According to Petitioner, these symptoms worsened during 1999 and 2000 to the point that she suffered increasingly worse attacks from smells such as perfumes, cleaning solutions, road tar, diesel exhaust fumes, fresh ink, and other strong scents. (AR 421). If she smelled such scents, it impacted her ability to breath, and caused dizziness,

nausea, uncontrollable coughing, and diuresis. (AR 421–423). She claimed that she had to quit her job as a truck stop cashier because customers' perfumes and cleaning fluids caused an onset of these symptoms. (AR 421).

Although her chemical sensitivities could not be confirmed with objective medical testing, Dr. Flod, an allergy specialist, Dr. Ali, an internist, and Dr. Gaines, Petitioner's treating physician, all diagnosed Petitioner with bronchial asthma and allergies, among other ailments. (AR 422–424). Dr. Flod's impression was that Petitioner suffered from asthma and extreme sensitivity to scents and fumes. He recommended avoidance of scented products and fumes, and prescribed medications to control her symptoms when an attack occurred. Dr. Gaines opined that Petitioner's chemical sensitivities limited her ability to engage in activities requiring exposure to chemicals, dust, or fumes. (AR 424). Dr. Craig, who testified at the hearing as a medical expert, also noted that Petitioner should avoid air pollution, including perfume. (AR 426).

Despite the extensive medical history of Petitioner's asthma and chemical sensitivity, the ALJ did not consider Petitioner's limitations in this regard credible. (AR 427–428). Even giving Petitioner the benefit of the doubt, the ALJ determined that Petitioner's pulmonary limitations could be managed by avoiding a working environment that required exposure to fumes or odors. (AR 429). Petitioner has not challenged this finding upon appeal.

As to Petitioner's mental impairments, there was extensive medical documentation of depression and other psychological symptoms, which became acute after Petitioner reported a mental breakdown in March 1997. (AR 420). Her medical records indicate a diagnosis of depressive disorder in 1991, (AR 420), and continuing treatment throughout 1992 and 1993 for

depression, anxiety, and bipolar disorder. (AR 420). In 1997, she was admitted for a psychiatric evaluation. While the records are incomplete, the initial impression was multiple personalities and a coping disorder. (AR 420–421). In 1998, she began taking Lithium and Prozac to control her symptoms, and was reported as improving by David Sandoval, MSW. (AR 421). On July 12, 2000, Petitioner returned to her physician's office for medication refills, and at that time it was noted that her bipolar disorder was "under good control with medication." (AR 422).

Petitioner was examined by Dr. Fields, a psychologist, on February 13, 2001, in association with her claim for benefits. Although he did not conduct psychological testing, he conducted a consultative mental status examination and diagnosed Petitioner with a major depressive disorder. Dr. Fields did not rule out either a personality disorder or bipolar disorder. (AR 423). The majority of her treating physicians and other mental health practitioners reported good management of Petitioner's symptoms with medication. (AR 425).

At the continued hearing held on November 13, 2002, Dr. Bostwick, a psychologist, testified that the medical evidence did substantiate a major depressive disorder and bipolar disorder, both controlled with medications, along with situational anxiety episodes and history of a mixed personality disorder. (AR 426). As a result, Dr. Bostwick testified that she had mild difficulty dealing with supervisors and criticism in a work environment, mild difficulties in maintaining social functioning, and no deficiencies of concentration, persistence or pace. (AR 426). In the decision dated February 20, 2003, the ALJ determined that her psychological impairments limited her to work activities requiring only minimal interactions with others. (AR 428). To the extent that the ALJ determined Petitioner's impairments limited her to minimal interactions with others, Petitioner does not contest this finding.

## 2. The Remand Order.

In his first decision, the ALJ determined that Petitioner's limitations did not preclude a return to her past relevant work as a cashier. (AR 428).[2] The Appeals Council vacated and remanded the ALJ's decision. The Council indicated that the vocational evidence was not summarized in the ALJ's decision, and that the decision did not "enumerate the demands of the job of truck stop cashier and compare it to the claimant's residual functional capacity. Specifically, [the decision] does not explain the apparent contradiction in the requirements of working as a cashier and having a minimal ability to interact with others. Further evidence is needed regarding the claimant's vocationally relevant work and the extent to which the claimant's limitations erode the occupational base for light work." (AR 444).

The Council directed the ALJ upon remand to "[o]btain supplemental evidence from a vocational expert to assist in comparing the demands of the claimant's vocationally relevant work with her residual functional capacity, and to clarify the effect of the assessed limitations on the claimant's occupational base." The Council specifically cited Soc. Sec. Ruling 83-14. If the ALJ considered step five, he was directed to pose hypothetical questions that reflected the specific capacity and limitations established by the record as a whole, and to ask the vocational expert to identify appropriate jobs and state the incidence of such jobs in the national economy. (AR 445). The ALJ was also directed to identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles before relying upon the vocational expert, citing Soc. Sec. Ruling 00-4p.

---

[2] The ALJ also determined that Petitioner could perform her past relevant work as a mail sorter. Upon remand, he concluded that her work as a mail sorter was not relevant. This determination is not at issue in this appeal.

**Memorandum Decision and Order - Page 9**

(AR 445).

### 3. The ALJ Committed Error By Failing to Clarify The Identified Conflict.

Upon remand, the vocational expert testified about the job demands of a truck stop cashier. He described the general demands as being required to be on one's feet, requiring an average degree of intellectual capacity, and an ability to deal with people. (AR 564). The ALJ then proposed a hypothetical to the vocational expert, asking if someone who was limited to lifting occasionally twenty pounds, frequently ten pounds, able to sit six out of eight hours, with no bending or stooping, should avoid pollen or dust and scents, and have only "superficial" contact with "co-employees" could perform work as a cashier. (AR 570-571). The vocational expert indicated that such a person could perform work as a cashier. An additional requirement of "superficial" contact with the general public was added to the hypothetical, and it did not alter the expert's opinion. (AR 571). Petitioner's counsel also asked whether limitations in attendance and mild difficulty in maintaining concentration would affect the expert's opinion as to the cashiering position. As to the attendance issue, the expert opined that "more probably than not" absenteeism would affect the individual's ability to perform his or her job as a cashier. (AR 571-572).

Based upon the above opinion, the ALJ found that Petitioner maintained the ability to perform "light" level work with limitations on bending and stooping, which work would also include sedentary work. (AR 24). He revised his opinion as to the effect of her mental health limitations, modifying his determination that instead of "minimal interaction with others" she should have only "superficial contact with others." (AR 24). And, he included the limitation that scents and smells should be avoided. (AR 24). Accordingly, he concluded that Petitioner's

**Memorandum Decision and Order - Page 10**

assessed functional capacity addressed all her ailments, both physical and mental, and determined that Petitioner's capacity for light work was intact and thus she could have performed her work as a cashier during the relevant period. (AR 25).

The Court finds that the ALJ failed to follow the directives of the Appeals Council, and therefore committed error. First, he was not directed to reassess Petitioner's residual functional capacity. Instead of utilizing his past determination that Petitioner should have only "minimal interaction" with others, the ALJ changed his hypothetical without giving any reason for doing so. Although the Council vacated the hearing decision, it directed the ALJ to resolve specific issues, not to revise his determination related to Petitioner's residual functional capacity.

If the Council had given a specific directive to reassess Petitioner's residual functional capacity, the ALJ could have done so provided there was substantial evidence in the record to support the change. *Massachi v. Astrue*, 486 F.3d 1149, 1154 (9th Cir. 2007). In the case of a hypothetical, the ALJ must make "specific findings" explaining his rationale for the exclusion of, or in this case the modification of, Petitioner's limitations in the hypothetical. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997). Here, the ALJ gave no reason for the change in his hypothetical relevant to Petitioner's mental health limitations. While he mentioned that Petitioner's mental functioning improved while on medication, (AR 24), this information was contained in the medical records and noted in the ALJ's first decision. This had resulted in the ALJ's determination that her mental health status resulted in "mild" difficulties in maintaining social function, (AR 426), and she was limited to "minimal" contact with others, (AR 553). The evidence relied upon by the ALJ to support the change in the terms of the hypothetical was the same, and therefore substantial evidence does not support the ALJ's revised finding.

**Memorandum Decision and Order - Page 11**

Even assuming that the ALJ's new finding is supported, he still failed to explain the contradiction between "superficial" contact with others and the apparent job demands of dealing with the public as a truck stop cashier as the Council requested.  At step four, the ALJ has a duty to look at a claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(e) and 416.920(e).  The claimant must be able to perform the actual functional demands and job duties of a particular past relevant work or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.  *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001).  This determination requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work.  *Pinto*, 249 F.3d at 845 (citing Soc. Sec. Ruling 82-62).

In addition, the ALJ has an "affirmative responsibility to ask about any possible conflict between that [vocational expert] . . . evidence and information provided in the [Dictionary of Occupational Titles]."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citing Soc. Sec. Ruling 00-4p).  This requires the ALJ to ask the vocational expert if the evidence he has provided is consistent with the Dictionary of Occupational titles and obtain a reasonable explanation for any apparent conflict.  *Massachi*, 486 F.3d at 1153.

In this case, the Council determined that there was a conflict between the apparent job requirements of Petitioner's past relevant work as a cashier and her limitation of "minimal" ability to interact with others.  Both categories of cashier listed in the Dictionary of Occupational Titles indicate dealing with people is a job requirement.  DICTIONARY OF OCCUPATIONAL TITLES 211.362-010 Cashier I; DICTIONARY OF OCCUPATIONAL TITLES 211.462-

010 Cashier II.  In such a case, the ALJ must discuss with the vocational expert any conflict with the Dictionary of Occupational Titles, and determine whether or not the expert's explanation for any conflict is reasonable and whether a basis exists for relying upon the expert's opinion rather than the Dictionary of Occupational Titles.  No such inquiry was made in this case to explain the identified conflict.  The Dictionary of Occupational Titles was not discussed during the vocational expert's testimony on remand, and the expert was not asked to explain why Petitioner's limitations either were or were not consistent with the demands of her job as a cashier.  Nor did the ALJ explain in his decision how he resolved the identified conflict.

### 4. The ALJ Used An Improper Hypothetical.

The medical record is replete with evidence documenting Petitioner's depression, bipolar disorder, and other mental health issues.  Dr. Bostwick, the testifying psychological expert, concluded that as a result of her mental impairments Petitioner had mild difficulty dealing with supervisors and criticism in a work environment, moderate difficulties in maintaining social functioning, and no deficiencies of concentration, persistence or pace.  (AR 542–544 ).  His determination was based largely upon the opinions of Petitioner's treating physicians and other treating professionals who indicated that her symptoms were controlled by regular medication.  (AR 542).  Dr. Bostwick's testimony is consistent with the medical record as a whole.  (*See, e.g.*, AR 291, 313–314, 348, 351–352).  The ALJ adopted Dr. Bostwick's opinion, (AR 428), and this determination was not challenged on appeal.

What is problematic is that despite Dr. Bostwick's characterization of Petitioner's mental health limitations, the ALJ did not incorporate them in his hypothetical upon remand.  (AR 570-571).  Instead, the ALJ used the term "superficial" contact with others instead of using the

accepted terms to rate Petitioner's degree of mental functioning. 20 C.F.R. § 404.1520a describes the required terminology and its meaning, adopting a five point scale using the adjectives "none," "mild," "moderate" or "marked" to assess a claimant's degree of mental function in three of four identified functional areas. It is not clear in the record whether the terminology adopted by the ALJ, limiting Petitioner to "superficial" contact with others, carries the same meaning as the accepted terminology or whether the vocational expert upon remand would have changed his opinion had the accepted terminology been used in the hypothetical.

In the absence of sufficient inclusion of Petitioner's mental restrictions as set forth by Dr. Bostwick, whose opinion the ALJ adopted, the hypothetical posed to the vocational expert was incomplete. It therefore does not constitute competent evidence to support the vocational expert's opinion that Petitioner could return to her past relevant work as a cashier. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (stating that the hypothetical posed to a vocational expert must consider all of the claimant's limitations); *Nguyen v. Chater*, 100 F.3d 1462, 1466 n.3 (9th Cir. 1996) (explaining that failure to include mental health impairments documented in the record by substantial evidence constitutes error); *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991) (holding that the failure to include a description of depression in a hypothetical rendered the expert testimony ambiguous).

The Court will therefore remand this matter to the ALJ for a specific determination of these issues in accordance with the legal standards expressed in this opinion.[3]

---

[3] Petitioner also contends that the ALJ was required to obtain additional expert medical testimony and/or conduct additional psychological testing to make the assessment at step four. The Court fails to see how this argument applies here, since psychological testing at this point will assess her current mental functioning capacity, while this matter involves a closed period that terminated on December 31, 2001. (*See* AR 549–550 (wherein Dr. Bostwick testified that further psychological testing would not affect his opinion as to the degree of mental impairment)). Also, Soc. Sec. Ruling 00-4p does not indicate that the required finding mandates additional medical

**B.     The ALJ's Error Is Not Harmless.**

The Court in this matter could consider the ALJ's error at step four in the analysis harmless since the ALJ assumed Petitioner was disabled at step four, but nonetheless went on to considered step five.  However, the ALJ's decision at step five was not properly ascertained, and therefore his determination of not disabled can not be affirmed.

At step five in the analysis, the burden shifts to the Commissioner to show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience.  *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (citing 20 C.F.R. § 404.1560(b)(3)).  There are two ways to meet this burden: (a) by the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines at 20 C.F.R. pt. 404, subpt. P, app. 2.  *Tackett*, 180 F.3d at 1101.

The ALJ determined that Petitioner could perform other work based upon her current employment status as a home health aide.  (AR 25).  The ALJ consulted the Medical-Vocational Guidelines, and determined that under the rules she retained the capacity to perform a substantial range of light and sedentary work, requiring a finding of not disabled.  (AR 25–26).

The ALJ's discussion of the Medical-Vocational Guidelines was insufficient to overcome the deficiency in his analysis.  If a claimant has both exertional and nonexertional limitations that limit the claimant's functional capacity in ways not contemplated by the guidelines, the guidelines are inapplicable.  *Tackett*, 180 F.3d at 1102.  Examples of nonexertional limitations would be Petitioner's inability to tolerate scents and fumes, and her mental health limitations.

---

evidence in the form of further psychological or other testing.

**Memorandum Decision and Order - Page 15**

Accordingly, the ALJ would be required to call upon a vocational expert and could not rely upon the grids alone, as he did in this case in his step five analysis. *Tackett*, 180 F.3d at 1102.

If a vocational expert is used, the expert must testify as to what jobs the claimant, given her residual functional capacity, would be able to do, and the availability of such jobs in the national economy, either in the claimant's region or in other regions of the economy. While the ALJ used a vocational expert at the hearing upon remand, the expert did not testify concerning any specific jobs in claimant's region or their availability, and simply testified she could perform light work based upon her previous jobs. (AR 571–573). However, the Appeals Council specifically requested consideration of the extent to which the claimant's limitations erode the occupational base for light work. Soc. Sec. Ruling 83-14, cited by the Council, explains how to make that determination when nonexertional impairments such as Petitioner's mental health and pulmonary limitations exist. The ALJ did not make the requisite analysis in his opinion as directed by the Council, and thus committed error.

## V.
## Conclusion

Based on its review of the entire record, the Court will grant the petition for review and will remand this case for reconsideration of Hamilton's disability status between April 19, 1997 and December 31, 2001, consistent with the legal standards expressed herein.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **IT IS HEREBY ORDERED that:**

1) Plaintiff's Petition for Review (Docket No. 1) is GRANTED.

2)      This action shall be REMANDED to the Commissioner for review in accordance with this order.

3)      This Remand shall be considered a "sentence four remand,"consistent with 42 U.S.C. § 405(g) and *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

DATED: September 11, 2007

Honorable Mikel H. Williams
Chief United States Magistrate Judge